UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| WILSON ARTHUR KNOTT, ) | Case No. 6:12-bk-07764-KSJ |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |

**MEMORANDUM OPINION DENYING CHAPTER 7 TRUSTEE'S
MOTION TO SELL PROPERTY OF THE ESTATE AND ALLOWING
DEBTOR TO PURSUE STATE COURT CLAIMS FOR ESTATE BENEFIT**

The Chapter 7 Trustee, Gene Chambers, seeks to sell any interest held by the Debtor, Wilson Knott, as a plaintiff in a state court lawsuit with his former business partners ("State Court Case"[1]).[2] Debtor and creditors Gregory Hastings and James Koepke—both of whom are co-plaintiffs of the Debtor in the State Court Case—object to the proposed sale.[3] Debtor argues that the Trustee abandoned the claim she seeks to sell,[4] while Hastings and Koepke assert that the proposed $5,000 sale price is insufficient and is not in best the interest of creditors.[5] Adding to the intrigue, the proposed purchaser of the Debtor's claim is the *defendant* in the State Court Case, Robert Dello Russo. Because the state court case appears to be so close to resolution, and the sale price is *de minimis* compared to the claims in this case, the Court denies the Trustee's motion.

---

[1] The State Court Case is Case No. 2010-ca-004751-O in the Circuit Court of the Ninth Judicial Circuit in Orange County, Florida.
[2] Trustee's Report and Notice of Intention to Sell Property of the Estate ("Motion to Sell"), Doc. No. 43.
[3] Objections to the Trustee's proposed sale were filed by: Hastings and Koepke (Doc. No. 46); State court counsel for the Debtor (Doc. No. 48); and the Debtor individually (Doc. Nos. 50 & 51). The prospective purchaser, Dello Russo, responded. (Doc. No. 57.)
[4] Doc. No. 48.
[5] Doc. No. 46.

The State Court Case stems from a business dispute between four owners of a real estate holding corporation, 11100 East Colonial Inc. ("ECI"). The four owners were the Debtor, Hastings, Koepke, and Dello Russo. ECI owned a large piece of real estate they intended to operate as a mini mall, akin to an upscale flea market. The four business partners' relationship crumbled, culminating in the State Court Case in which the Debtor, Hastings, and Knott allege Dello Russo diverted money from ECI for personal gain, assumedly along with other similar claims.[6] The State Court Case has toiled on for years, delayed first by the Debtor's bankruptcy filing and later by the August 2014 bankruptcy filing ECI.[7]

With that brief background, the Trustee seeks to sell the Debtor's claims, whatever they are, in the State Court Case under § 363(b) of the Bankruptcy Code. Section 363(b) provides a mechanism for trustees to sell estate property outside of the ordinary course of business: "The trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[8] If a party in interest objects to the sale, a trustee must obtain the bankruptcy court's approval before the sale can proceed.[9]

In objecting to the sale, the Debtor argues the Trustee abandoned the State Court Claim after she learned of the potential claim and delayed in pursuing it.[10] This is not how abandonment works. Section 554 of the Bankruptcy Code provides three ways in which property becomes abandoned: (1) the trustee can voluntarily abandon property, after notice and hearing; (2) a party in interest, after notice and hearing, can request the court to order the trustee to abandon property that is burdensome and of inconsequential value to the estate; or (3)

---

[6] The filings are not entirely clear how the Debtor became a plaintiff in the State Court Case, as the Debtor previously was a defendant. (*See* Doc. No. 32.) For the purposes of this ruling, however, the issue is not relevant. Suffice it to say, the Debtor holds *some* interest in the State Court Case capable of being sold.
[7] Case No. 6:14-bk-09589-KSJ.
[8] 11 U.S.C. 363(b) (2014).
[9] *E.g.*, *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998).
[10] (Doc. No. 51.) This objection was filed on behalf of the Debtor by his State Court counsel.

property not administered by the trustee becomes abandoned *at the closing of the case*, also known as "technical abandonment."[11] No party filed a motion requesting the Trustee abandon the State Court Claim. In fact, the Debtor only recently learned he held a claim in the State Court Case.[12] The Trustee did not formally abandon the property. And the case has not closed, ruling out technical abandonment. The State Court Claim remains property of the estate.

The legal standard for court approval of a § 363(b) sale has been stated in different ways, but the prevailing standard requires the Trustee to "establish sound business reasons for the terms of the proposed sale."[13] Once a trustee provides such sound business reasons, his or her business judgment generally is entitled to a certain amount of deference: "The Trustee is responsible for the administration of the estate and his judgment on the sale and the procedure for the sale is entitled to respect and deference from the Court, so long as the burden of giving sound business reasons is met."[14] But this deference is not unfettered. "A duty is imposed upon the trustee to maximize the value obtained from a sale, particularly in liquidation cases."[15] To ensure a trustee complies with his or her duties, a bankruptcy court is "generally afforded wide latitude in deciding whether to grant or deny approval of estate asset sales."[16] Additionally, in appropriate circumstances, it is proper for a court to interfere with a proposed sale to safeguard the interests of parties concerned, such as creditors.[17]

---

[11] 11 U.S.C. § 554. *See also In re Bast*, 336 B.R. 237, 239–40 (Bankr. S.D. Fla. 2007).
[12] *See* Doc. No. 50 at 2–3.
[13] *In re Diplomat Const., Inc.*, 481 B.R. 215, 219 (Bankr. N.D. Ga. 2012) (citing *U.S. ex rel. Rahman v. Oncology Associates, P.C.*, 269 B.R. 139 (D. Md. 2001) *aff'd sub nom. U.S. ex rel. Rahman v. Colkitt*, 61 F. App'x 860 (4th Cir. 2003)). *See also In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (requiring an "articulated business justification"); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.").
[14] *Id.* (citing *In re Bakalis*, 220 B.R. 525, 531–32 (Bankr. E.D.N.Y. 1998)).
[15] *Bakalis*, 220 B.R. at 532 (citing cases).
[16] *Id.* (citations omitted).
[17] *Id.*

The Trustee's "sound business justification" for the sale is that it "is in the best interests of the estate and its creditors as it permits the Trustee to liquidate the Property rather than delay the closing of the estate, pending resolution of the State Court Action."[18] Based on the parties' representations, the State Court Case is nearing completion: a trial date has been set at least once but was delayed by this and ECI's bankruptcy. This stated business justification fails to meet the Trustee's burden: The cost of not closing the case is minimal. The Debtor moreover already is represented by counsel in the State Court Case, and he is not asking the Trustee to pay any legal fees or expenses.[19] The objecting parties only ask that the Trustee stand down and *not* sell the estate's interest so that they (including the Debtor) can pursue their own and the Debtor's claims and maximize their recovery as creditors of the bankruptcy case. Hastings holds far and away the largest claim in this case—$2.2 million—and his interests are aligned with the estate's interests.[20]

The Court simply fails to see the downside of allowing the objecting parties to pursue the Debtor's claim when it will cost the bankruptcy estate nothing, especially considering the miniscule sale price of $5,000. The objecting parties allege the Debtor's potential recovery could be more than $146,000. And though this Court holds no crystal ball and is dubious of such an estimation, the fact that Dello Russo, the primary defendant, is attempting to buy the Debtor's claim at least lends a shred of credibility to the State Court plaintiffs' case. The Court concludes that permitting the State Court Case to move forward will safeguard the interests of creditors and the Debtor.

---

[18] Doc. No. 43 at 3.

[19] After the Debtor discovered he held a claim in the State Court Case, he engaged the firm representing the then-existing plaintiffs Hastings and Knott. At the hearing on this notice of sale, the objecting parties made clear that they did not expect the Trustee to actively participate in the State Court Case or to pay any of the costs.

[20] (Claim No. 3-1.) Admittedly, the claims bar date has not yet passed (Doc. No. 44), but a review of the Debtor's schedules shows only three unsecured creditors (Doc. No. 1 at 17–18). Debtor later amended his schedules to add Hastings and Koepke because, at that time, he was a defendant in the State Court Case. (Doc. No. 16.) It remains to be seen whether Hastings's claim will be objected to.

With that aim in mind, the Court, *sua sponte*, will modify the automatic stay so the Debtor can pursue his claims in the State Court Case.[21] Under § 362, a bankruptcy court can grant relief from the automatic stay "for cause."[22] "Cause" is not defined by the Code, so discretionary relief from the stay must be determined on case-by-case.[23] In analyzing whether "cause" exists to grant relief from stay, the Court examines whether: "(1) any great prejudice to either the bankrupt estate or the debtor will result from continuation of a civil suit, (2) the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor, and (3) the creditor has a probability of prevailing on the merits of its lawsuit."[24]

Allowing the Debtor to pursue the State Court Claim and remit any damages award to the Trustee could potentially benefit the estate and pay creditors. Debtor will suffer no hardship by eliminating the stay; indeed, he is in favor of the proposition. The last factor, probability of success on the merits in the underlying suit, is difficult but, considering the State Court Case is so far along, the Court concludes that having that case decided on its merits by the State Court is in the best interest of all creditors in this case, the Debtor, the Chapter 7 Trustee, and the bankruptcy estate.

As such, the Court lifts the § 362 automatic stay to the extent necessary to permit the Debtor to pursue his individual claims in the State Court Case to completion, provided however, that any monies recovered by the Debtor in connection with the litigation shall be paid to and

---

[21] Although this is not the typical relief from stay situation, § 362(a)(3) states that the automatic stay operates as a stay to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). By pursuing the State Court Claim, the Debtor arguably is attempting to exercise control over property of the estate (the State Court Claim). To eliminate and uncertainty over the issue, the Court will expressly lift the stay so he can proceed.

[22] 11 U.S.C. § 362(d).

[23] *In re Jefferson Cnty., Ala.*, 491 B.R. 277, 297 (Bankr. N.D. Ala. 2013) (quoting *In re Mac Donald*, 755 F.2d 715, 717 (9th Cir. 1985)).

[24] *Id.*

distributed by the Chapter 7 Trustee.  The Court sustains all objections to the Trustee's notice of sale.[25]  A separate order sustaining the objections, disapproving the Trustee's notice of sale, and lifting the automatic stay will be entered simultaneously.

DONE AND ORDERED in Orlando, Florida, January 20, 2015.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

The Clerk is directed to serve a copy of this Order on all interested parties.

---

[25] Doc. Nos. 46, 48, 51.